LEASHER et al., Appellants,

v.

LEGGETT & PLATT, INC., Appellee.

[Cite as *Leasher v. Leggett & Platt, Inc.* (1994), 96 Ohio App.3d 367.]

Court of Appeals of Ohio,
Warren County.

No. CA93–12–099.

Decided Aug. 8, 1994.

*Robert M. Lancione,* for appellants.

*Freund, Freeze & Arnold* and *Patrick J. Janis,* for appellee.

---

WALSH, Judge.

Plaintiffs-appellants, Harold W. and Sharon Leasher, appeal an order of the Warren County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Leggett & Platt, Inc.

On August 21, 1991, Harold Leasher sustained serious and permanent injuries as a result of an automobile accident involving a third person. Leasher's wife, a passenger, sustained no injuries. Thereafter, Leasher sought payment of medical and disability benefits under a medical benefits plan maintained by Leasher's employer, appellee. Relying upon a provision of the plan titled "What about third party reimbursements?" appellee asked appellants to first recognize appellee's rights of subrogation and first reimbursement and to execute documents necessary to protect these rights. When appellants refused to comply with appellee's request, appellee denied any benefits.

On November 7, 1991, appellants filed a complaint in the trial court asking for the denied benefits as well as praying for damages resulting from appellee's refusal to pay the benefits. On July 27, 1992, appellee filed a counterclaim requesting a declaration that the plan gives appellee rights of subrogation and first reimbursement from any person who may be liable to appellants for their injuries and resulting damages. Appellants' complaint was thereafter rendered moot by appellee's eventual payment of the medical and disability benefits under the plan. On May 18, 1993, appellee filed a motion for summary judgment, which the trial court granted on September 28, 1993. The trial court's entry was filed on November 12, 1993, and states in relevant part:

"5. Defendant, Leggett & Platt, Incorporated, is subrogated to the rights of Plaintiffs, Harold W. Leasher and Sharon Leasher, to the extent of any payments made by Defendant, Leggett & Platt, Incorporated, for medical benefits to or on behalf of the Plaintiff, Harold W. Leasher, pursuant to Plan 294–295 and for any payments for weekly disability income benefits paid to or on behalf of Plaintiff, Harold W. Leasher, pursuant to Plan 160.

"6. Defendant, Leggett & Platt, Incorporated, is entitled to repayment of its subrogated interest against potential third parties arising out of an incident occurring on August 21, 1991, before any funds from third parties are paid to Plaintiffs, Harold W. Leasher and Sharon Leasher."

Appellants timely filed this appeal and raise two assignments of error. In their first assignment of error, appellants argue that the trial court erred in granting

summary judgment in favor of appellee. Appellants first contend that the language of the plan provision allegedly giving a right to subrogation to appellee is so vague and ambiguous that the provision should be void. Appellants also contend that the trial court erred in finding that the provision gave appellee rights of subrogation and first reimbursement because by doing so the trial court added terms to the provision that were not there. Finally, appellants contend that, even if appellee has a right of subrogation, it cannot be reimbursed for any payments it made to Leasher until Leasher receives full recovery from the third-party tortfeasor.

Appellee argues that the plan is governed by the Employee Retirement Income Security Act ("ERISA"), which in turn preempts any state law appellants may claim applies to the plan. As a result, appellee contends that the interpretation of the plan provisions is within the plan administrator's discretion, and as such is governed by the "arbitrary and capricious" standard. Appellee contends that the plan administrator properly interpreted the plan provision to give appellee a priority right to the proceeds paid by or on behalf of the tortfeasor.

ERISA comprehensively regulates employee pension and welfare plans. It imposes participation, funding, and vesting requirements on pension plans and sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibilities for both pension and welfare plans. *Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490.

Section 1003, Title 29, U.S.Code, governing the coverage of ERISA provides as follows:

"(a) Except as provided in subsection (b) and in [Sections 1051, 1081, and 1101, Title 29, U.S.Code], this title shall apply to any employee benefit plan if it is established or maintained * * *

"(1) by any employer engaged in commerce or in any industry or activity affecting commerce; or

"(2) by any employee organization or organization representing employees engaged in commerce or in any industry or activity affecting commerce; or

"(3) by both."

Section 1002, Title 29, U.S.Code, provides as follows:

"(1) The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program * * * established or maintained by an employer * * * to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or

benefits, or benefits in the event of sickness, accident, disability, death or unemployment * * *[.]

"(3) The term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan."

In the case at bar, appellee's plan is a self-insured plan maintained by appellee to provide its employees with medical and disability benefits in the event of sickness, accident, or disability. As a result, the plan falls within the coverage of ERISA.

This does not end our inquiry however. Section 1144(a), Title 29, U.S.Code, preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. A state law "relates to" an ERISA governed plan "if it has a connection with or reference to such a plan." *Shaw, supra,* 463 U.S. at 96–97, 103 S.Ct. at 2900, 77 L.Ed.2d at 501. Thus, a state law claim is preempted by ERISA if the claim is for the recovery of an ERISA plan benefit. *Cromwell v. Equicor–Equitable HCA Corp.* (C.A.6, 1991), 944 F.2d 1272. In the case at bar, although appellants' complaint did ask for the recovery of the denied benefits under appellee's plan, it was subsequently rendered moot by appellee's payment of the benefits. The issue before us now is whether the plan gives appellee rights of subrogation and first reimbursement in any funds appellants may receive from the third-party tortfeasor.

In the seminal case of *FMC Corp. v. Holliday* (1990), 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356, the United States Supreme Court discussed whether ERISA preempted the application of Pennsylvania's antisubrogation statute which specifically prohibited an insurer from collecting funds from a plaintiff in satisfaction of its subrogation interest when the plaintiff had been injured and obtained recovery in an action arising out of the maintenance or use of a motor vehicle. The court reasoned that, under ERISA's preemption clause, the state statute did relate to employee benefit plans and therefore was preempted. The court concluded that ERISA preempts the application of state antisubrogation laws to self-funded health care plans.

Other circuits have similarly held that ERISA preempts state antisubrogation laws. *Baxter v. Lynn* (C.A.8, 1989), 886 F.2d 182 (Missouri law prohibiting employers from structuring their employee benefit plans in a manner that requires reimbursement in the event of recovery from a third party is preempted); *United Food & Commercial Workers v. Pacyga* (C.A.9, 1986), 801 F.2d 1157 (Arizona antisubrogation law which prohibited assignment of third-party claims is preempted); *Electro–Mechanical Corp. v. Ogan* (C.A.6, 1993), 9 F.3d 445 (ERISA preempted Tennessee Medical Malpractice Act to the extent it prevented self-

funded health plan from seeking to recover costs of plan participant's medical expenses from settlement proceeds).

In each of the foregoing cases, the courts were confronted with state statutes that regulated either directly or indirectly the terms of an ERISA-governed welfare plan. This is also true for the United States Supreme Court opinion. By contrast, in the case at bar, appellee has not cited, and we have not found, any Ohio antisubrogation statutes that would be applicable here. Furthermore, Ohio law does not prohibit an insurer from being subrogated to the rights of an insured against a third-party tortfeasor, nor does it prevent an employer from structuring its employee benefit plan so as to be reimbursed in the event of recovery from a third party. Accordingly, we find that the case at bar is governed by state law and not by ERISA.

We now turn to appellants' first assignment of error. The plan provision at issue states:

"WHAT ABOUT THIRD PARTY REIMBURSEMENTS?

"If you or your dependent receives benefits, services, payments, or credits for a physical condition or injury caused by a third party, or for which a third party may be liable; the Plan reserves the right to recover any amount it has paid for the condition or injury in question.

"The Plan may recover directly from you any amount you have received from the third party. The Plan may also seek recovery directly from the third party."

 An insurance policy is a contract and the relationship between the insurer and the insured is purely contractual. *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 15 OBR 261, 472 N.E.2d 1061. When the provisions of an insurance policy are clear and unambiguous, courts may not indulge themselves in enlarging the contract. *Longpre v. Midwest Optical Supply, Inc.* (1990), 68 Ohio App.3d 198, 587 N.E.2d 948.

 Unlike appellants, we find that the plan provision is not vague or ambiguous. Although the provision does not expressly contain the word "subrogation," its language nevertheless provides for appellee to be subrogated to the rights of Leasher for "any amount it has paid for * * *." The record indicates that appellee paid Leasher $51,605.76 in medical and disability benefits. The trial court was therefore correct in finding that appellee was subrogated to the rights of Leasher for the payments it made to Leasher with regard to medical and disability benefits. However, based upon the clear language of the provision, we find that these are the only amounts for which appellee has a right of subrogation. Appellee has no right of subrogation to Leasher's right to recover other damages, such as for pain and suffering, from the third-party tortfeasor.

In addition, we find that specific expenses are to be deducted from the amount appellee can recover from Leasher. Such expenses necessarily include attorney fees and court costs which Leasher will have to incur in order to recover from the third-party tortfeasor. Accordingly, appellee's right of reimbursement is limited to the amount of medical and disability benefits it paid to Leasher less any attorney fees and court costs Leasher will have to pay to obtain recovery.

Finally, we agree with appellants that the provision does not give appellee the right to be reimbursed for its subrogated interest before any funds are paid to appellants. Although the provision allows appellee to recover directly from Leasher or from the third-party tortfeasor, it does not give appellee any priority as to when it can recover. Accordingly, the trial court erred when it found that appellee was "entitled to repayment of its subrogated interest against potential third parties * * *, before any funds from third parties are paid to [appellants]." Appellants' first assignment of error is therefore well taken and sustained.

In their second assignment of error, appellants argue that the trial court erred in finding that appellee was subrogated to the rights of Sharon Leasher's wife. We agree.

The plan provision states that "[i]f you or your dependent receives benefits * * * [or] payments * * * for a physical condition or injury caused by a third party, * * * the Plan reserves the right to recover *any amount it has paid for the condition or injury* in question." (Emphasis added.) In the case at bar, the record indicates that Sharon Leasher sustained no injuries in the automobile accident. The record also indicates that she did not receive any benefits, medical or otherwise, under appellee's employee benefit plan. As a result, appellee has no right of subrogation to Sharon Leasher's rights to recover damages, such as damages for loss of consortium, from the third-party tortfeasor. We therefore find that the trial court erred in finding that appellee was subrogated to the rights of Sharon Leasher. The trial court similarly erred in finding that appellee was entitled to repayment before any funds from the third-party tortfeasor were paid to Sharon Leasher. Appellants' second assignment of error is well taken and sustained.

We reverse the judgment of the trial court and remand the instant matter to the lower court for further proceedings in a manner consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FRED E. JONES, P.J., and KOEHLER, J., concur.